UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X

John Doe,

        *Plaintiff*,                                                     No. 1:24-cv-07778

        v.

SEAN COMBS, DADDY'S HOUSE RECORDINGS INC.,
CE OPCO, LLC d/b/a COMBS GLOBAL f/k/a
COMBS ENTERPRISES LLC, BAD BOY
ENTERTAINMENT HOLDINGS, INC.,
BAD BOY PRODUCTIONS HOLDINGS, INC.,
BAD BOY BOOKS HOLDINGS, INC., BAD BOY
RECORDS LLC, BAD BOY ENTERTAINMENT LLC,
BAD BOY PRODUCTIONS LLC, and
ORGANIZATIONAL DOES 1-10,

        *Defendants*.

-------------------------------------------------------X

# MEMORANDUM OF LAW IN OPPOSITION
# <u>DEFENDANT MOTION TO DISMISS</u>

                                            **CURIS LAW, PLLC**
                                            Antigone Curis
                                            52 Duane Street, 7th Floor
                                            New York, New York 10007

Plaintiff John Doe ("Plaintiff"), by and through his undersigned counsel Curis Law, hereby files this Memorandum of Law in Opposition to Defendants Sean Combs, Daddy's House Recordings Inc., CE OpCo, LLC d/b/a Combs Global f/k/a Combs Enterprises, LLC, Bad Boy Entertainment Holdings, Inc., Bad Boy Productions Holdings, Inc., Bad Boy Books Holdings, Inc., Bad Boy Entertainment LLC, and Bad Boy Productions LLC's (the "Combs Defendants") motion to dismiss Plaintiff's Complaint pursuant to Rules 8(a) and 12(b)(6) of the Federal Rules of Civil Procedure ("FRCP"). For the reasons set forth herein, the Motion should be denied.

## **PRELIMINARY STATEMENT**

The "white parties" held by Defendant Combs in the Hamptons are legendary and well-known by many, including Plaintiff. These are parties where countless celebrities would attend. In the year 1998 – when Plaintiff was merely a 16-year-old child – he was recruited out of New York City, receiving an invitation to one of Combs' parties through a mutual connection. When Plaintiff received the invitation, he felt like this was an enormous opportunity to be in the presence of the "who's who" of the music and entertainment industries. Simply stated, Plaintiff viewed this as his opportunity to break into the music industry.

The subject party took place at Combs' mansion in the Hamptons. As Plaintiff entered, he spotted countless celebrities and recognizable persons, many of whom (if not all) were from the music and entertainment industry. Plaintiff recognized most of the people at the party from having seen them in television shows and films.

While making his way through the crowd at this event, Plaintiff unexpectedly encountered Combs. Plaintiff, excited, took a photograph with Combs. (*"Compl."*) [Dkt. No. 1]. Combs immediately took an interest in and started talking to Plaintiff. Combs led Plaintiff to a more private area of the house near some portable restrooms brought in for the event. Plaintiff told Combs that he was a huge fan, and then shared his dreams of becoming a star in the entertainment industry. Combs told Plaintiff he had potential and "the

2

look" to do so. Plaintiff was nervous because he doubted whether he had the right voice to break into the industry, but Combs assured him that it wouldn't matter. Combs made it clear that the only thing which mattered, as far as the entertainment industry was concerned, was if you had "the look." With that, Combs informed Plaintiff that he could transform Plaintiff into a star.

At this point, however, the conversation took an unexpected and unwelcome turn. Combs abruptly told Plaintiff to drop his pants. Plaintiff was entirely caught off guard and asked Combs to repeat what he had just stated. Combs then (again) instructed Plaintiff to drop his pants and expose his penis. Combs stated he needed to inspect Plaintiff's penis, as it was a "rite of passage" in order to become a star within the entertainment industry. Combs stated to Plaintiff, "Don't you want to break into the business?"

Plaintiff didn't know what to do. He was shocked by what was transpiring. Combs wasn't remotely uncomfortable, as exhibited by his actions and demeanor. In fact, Combs remained calm and stood in front of Plaintiff with his hand in a cupped position. Plaintiff was terrified, frozen with fear. He acquiesced to the demands of Combs, giving in to a clear power imbalance. Plaintiff removed his pants and exposed his penis as Combs demanded.

Combs moved closer and grabbed Plaintiff's penis and genitals with his hand. He firmly cupped Plaintiff's testicles and held onto them for an extended period of time. During this time, Combs moved his hand to manipulate Plaintiff's genitals. Again, Plaintiff was merely a 16-year-old child, deeply fearful of Combs and the ramifications of Plaintiff's refusal to comply with his demands.

Abruptly, Combs let go of Plaintiff's genitals, and informed Plaintiff that Combs' people "would be in touch." Combs went back to the party as though nothing had happened, but for Plaintiff, his entire life had changed. Plaintiff realized that Combs had sexually assaulted him, using his position of power in order to do so.

Plaintiff has experienced pain and suffering, mental anguish, physical impairment, and emotional torment as the direct result of the aforementioned conduct of Combs. The interaction continues to cause Plaintiff to feel humiliated and ashamed.

Now, Defendants seek to dismiss this action pursuant to FRCP §§ 8 and 12(b)(6). *First*, Defendants argue that Plaintiff's GMVL claim fails because the alleged conduct of Defendants predates the GMVL, and that the GMVL cannot be retroactively applied. *Second*, they contend that Plaintiff's GMVL claim fails because the alleged conduct happened outside the City of New York. *Third*, Defendants contend that Plaintiff's GMVL claim is untimely because State law preempts the GMVL's revival provision. *Fourth*, Defendants take that position that Plaintiff has failed to alleged the required "serious risk of physical injury" element of a GMVL claim. *Fifth*, Defendants take the position that Plaintiff's GMVL claim against the company defendants fails because the GMVL did not apply to corporate entities at the time of the alleged misconduct. Finally, *sixth*, Defendants allege the GMVL claim against the company defendants fails because there are no allegations of conduct subjecting them to liability. For the reasons set forth above and herein, Defendants' motion must be denied in its entirety.

## STANDARD OF REVIEW

Under Rule 8, a complaint must contain "a short plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).

When deciding a motion to dismiss under Rule 12(b)(6), "[t]he appropriate inquiry is not whether a plaintiff is likely to prevail, but whether the plaintiff is entitled to offer evidence to support her claims." *Palkovic v. Johnson*, U.S. App. LEXIS 12600, *5 (2d Cir. Jun. 13, 2008). In considering Defendant's motion to dismiss, the Court must accept as true all of the factual allegations in the Complaint and draw all inferences in Plaintiff's favor. *Rolon v. Henneman*, 517 F.3d 140, 142 (2d Cir. 2008). Further, the Court's task is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Leavitt v. Bear Sterns & Co.*, 340 F.3d 94, 101 (2d Cir. 2007).

## ARGUMENT

A. **Retroactive Application of GMVL is Accepted and Defendants Misapprehend State Law Preemption Principles**

As originally enacted, the VGMVPL provided victims of gender-motivated crimes of violence with a cause of action against only the individual who perpetrated the crime. (See NYC Municipal Code Title 10, Chapter 11, §10-1104, eff. Dec. 19, 2000.) Effective January 2022, the City Council amended §10-1104 to provide "any person claiming to be injured by a party who commits, directs, enables, participates in, or conspires in the commission of a crime of violence motived by gender has a cause of action against such party." (§10-1104, eff. Jan. 9, 2022.) In the same enactment, the City Council also amended §10-1105, entitled "Limitations," to provide: "any civil claim or cause of action brought under this chapter that is barred because the applicable period of limitations has expired is hereby revived and may be commenced not earlier than six months after, and not later than two years and six months after, September 1, 2022." Taken together, the two amendments (1) expanded liability to non-perpetrator defendants where no liability had previously existed and (2) revived causes of action brought under the statute whose limitations period had already expired. Neither §10-1104 nor §10-1105 have express provisions that apply the VGMVPL to causes of actions accruing before its 2000 enactment.

Defendants' arguments are contrary to the VGMVPL's primary intention: to make it easier for victims of gender-motivated violence to seek civil remedies in court—not, as Defendants would have it, make it harder. New York City passed the VGMVPL "[i]n light of the void left by the Supreme Court's decision" in *United States v. Morrison*. N.Y.C. Admin. Code § 8-902. *Morrison* struck down the federal right of action for victims of gender-motivated violence under the Violence Against Women Act (VAWA) (42 U.S.C. § 13981), holding that Congress lacked the authority under the Commerce Clause and the Fourteenth Amendment to pass such a remedy. 529 U.S. 598, 627 (2000).

"It is fundamental that in interpreting a statute, the court should attempt to effectuate the intent of the Legislature." *Cadiz-Jones*, 2002 WL 34697795, at *1 (Sup. Ct. NY. Cnty. Apr. 9, 2002) (holding VGMVPL was intended to apply retroactively) (citing *Patrolmen's Benevolent Assn. v City of New York*, 41 N.Y.2d 205, 208 (1976)). The Council intended the VGMVPL to make it easier for victims of gender-motivated violence to seek court remedies. *Id.* It intended the same when it passed the 2022 amendment to the law. *See, e.g., City Council H'rg Testimony* (Nov. 29, 2021) at 41 (testimony in support of act's passage describing sexual abuse in 1993); Hr'g Tr. (Nov. 29, 2021) at 129–30 ("In summary, there is no timeline on processing trauma. Not passing this Bill means we would be denying what it means to be fundamentally human and denying the research and the science that it takes some of us longer than other, not only to come forward, but to tell our story."), 131 ("I am here to tell you that a victim doesn't have a set time for when they came come forward. . .. Please pass the amendment to allow the window for justice to be pursued by all victims of gender-motivated violence." (emphasis added)). "Based on an analysis of statutory text and history" it is clear that "the legislative body intended [the VGMVPL] to apply retroactively." *Cadiz-Jones*, 2002 WL 34697795, at *1.1. The Complaint is not time barred and Plaintiff's VGMVPL claim is valid.

Defendants are also incorrect that the VGMVPL revival statute is preempted by the Child Victims' Act ("CVA"). Judge Clarke of the Southern District of New York extensively analyzed this issue and found that field preemption did not bar the revival statute, that the CVA did not indicate an intent to occupy the field, that the CVA was not a "comprehensive and detailed regulatory scheme," and that conflict preemption did not bar the revival statute. *See Doe v. Black*, No. 23-CV-6418 (JGLC), 2024 U.S. Dist. LEXIS 175929, *6-20 (S.D.N.Y. 2024).

**B.      It Does Not Matter Here that the Assault Occurred Outside of New York City**

At the time of the assault alleged here, Plaintiff was a resident of New York City. *See* Complaint (Dkt. 1) at ¶ 34 (Plaintiff received an invitation while residing in New York City). New York courts have held that the VGMVPL applies to, and gives rise to a claim for, an assault occurring outside the territorial boundaries of New York so long as the Plaintiff was a resident of New York at the time. *See Doe v. Doe*, 83 Misc.3d 408, 414-415 (S. Ct. 2024) (applying VGMVPL to assault occurring in the Poconos to a plaintiff who was resident of New York City at the time).

## C. Plaintiff Alleges "Serious Risk of Physical Injury" Element

Under the GMVL, "crime of violence" is defined as "an act or series of acts that would constitute a misdemeanor or felony against the person as defined in state or federal law or that would constitute a misdemeanor or felony against property as defined in state or federal law if the conduct presents a serious risk of physical injury to another, whether or not those acts have actually resulted in criminal charges, prosecution, or conviction." *N.Y.C. Admin. Code* § 10-1103.

Recently, in *Baldwin v. TMPL Lexington LLC*, No. 23 CIV. 9899 (PAE), 2024 WL 3862150 (S.D.N.Y. Aug. 19, 2024) the Southern District of New York denied a defendant's motion to dismiss wherein they argued plaintiff failed to meet the required serious risk of personal injury element of the GMVL. The Court held:

> The [complaint] adequately pleads that [the defendant] committed a gender-motivated crime of violence. At the threshold, the Court begins by observing that [plaintiff]'s claim is that [the defendant]'s conduct constituted a "misdemeanor or felony against the person"—not a "misdemeanor or felony against property." N.Y.C. Admin. Code § 10-1104. The latter category carries the additional requirement that the "conduct presents a serious risk of physical injury to another." *Id.* But the former category—a misdemeanor or felony against the person—relied on by [plaintiff] does not. Accordingly, the Court rejects [defendant]'s argument that his alleged conduct does not qualify as a crime of violence because his conduct did not, as pled, present a serious risk of physical injury to [plaintiff].

*Id.* at 11.[1] Here, the conduct alleged amounts to *at minimum* forcible touching, a class A misdemeanor under New York law – and moreover was perpetrated upon a minor.

In *Brown v. New York Design Ctr., Inc.*, the court held that there may be recovery for emotional trauma in the absence of physical injury. Evidence must be produced that is sufficient to guarantee the genuineness of the claim. *Brown v. N.Y. Design Ctr., Inc.*, 185 N.Y.S.3d 97, 100 (2023). There the Plaintiff testified to humiliation, embarrassment, feelings of being violated, and paranoia. *Id.* The court reasoned, the Plaintiffs' psychological traumas are readily and unquestionably understandable, evidencing "an especial likelihood of genuine and serious mental distress, arising from the special circumstances." *Id.* at 101. Additionally, the *Brown* court held that extreme and outrageous conduct is not an essential element of a cause of action to recover damages for negligent infliction of emotional distress. *Id.* at 102.

---

[1] The Court further explains: "To be sure, [defendant]s argument has a basis in caselaw. But it is unsupported by the GMVPA's text. *See Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 108 (2d Cir. 2012) ("As with any question of statutory interpretation, [the Court] begin[s] with the text of the statute to determine whether the language at issue has a plain and unambiguous meaning."). Construing the text of the definition of a "crime of violence," the "serious risk of physical injury" requirement applies only when a GMVPA claim is premised on a "misdemeanor or felony against *property*" not against "the person." N.Y.C. Admin Code § 1103 (emphasis added). That is because the "serious risk of physical injury" requirement only modifies the category "misdemeanor or felony against property." And the phrases "misdemeanor or felony against the person" and the phrase "misdemeanor or felony against property" are each introduced by the clause "that would constitute" and are separated by the word "or." This construction suggests that among the two alternative categories of predicate offenses, the qualifying clause—beginning with "if"—that contains the requirement of a "serious risk of physical injury" and that appears after the second category modifies only that category. Notably, courts interpreting the almost identical (albeit no longer operative) language in the VAWA construed it this way. *Peddle v. Sawyer*, 64 F. Supp. 2d 12, 17 (D. Conn. 1999) ("In order to state such a claim under the VAWA, Ms. Peddle must allege that the defendants committed a 'crime of violence,' which is defined as an offense constituting either (1) a felony against the person, or (2) a felony against property if the conduct presents a serious risk of physical injury to another, and would come within the meaning of state or federal offenses described in 18 U.S.C. § 16."); *Timm v. Delong*, 59 F. Supp. 2d 944, 948 (D. Neb. 1998) (same).

Accordingly, for [plaintiff]'s [complaint] to state a claim under the GMVA based on a predicate crime against *the person*, it must plead that: (1) the alleged act constitutes a misdemeanor or felony against the person; (2) that was perpetrated because of plaintiff's gender; (3) in part because of animus against plaintiff's gender; and (4) resulted in injury. Walsh challenges the first and third of these elements. The Court finds both plausibly pled." *Id.* 2024 WL 3862150, at 11–12 (S.D.N.Y. Aug. 19, 2024).

**D. Plaintiff Clearly Alleges Gender Animus**

Under the GMVA, a crime is "motivated by gender" if it involves "an animus based on the victim's gender" (NYC Admin. Code §10-1104). Courts have repeatedly held that sexual violence inherently demonstrates gender-based animus:

- *Breest v. Haggis* (180 AD3d 83, 94 [1st Dept. 2019]): "Without consent, sexual acts… are a violation of the victim's bodily autonomy and an expression of contempt for that autonomy. Animus inheres where consent is absent."
- *Engelman v. Rofe* (194 A.D.3d 26 [1st Dept. 2021]): Found gender-based animus in sexual assaults involving groping and coerced sexual acts.

Here, Plaintiff alleges acts of sexual violence—including molestation and coercion—that dehumanized him and disregarded his autonomy. Such acts clearly demonstrate gender-based animus, both on its face as well as within the aforementioned binding precedent.

The GMVA does not require Plaintiffs to show animus directed at an entire gender group. Individual instances of gender-based violence satisfy the animus requirement (*Cespedes v. Weil*, 2021 WL 495752 [Sup. Ct. 2021]).

The Combs Defendants would have this Court believe that only violent sexual acts committed by a man against women are evident of animus against women and the same cannot be true for male-on-male sexual abuse. However, that is against the legislative intent of the GMVL and simply illogical. It does not follow that just because Mr. Combs sexually assaulted men and women does not mean that his sexual abuse towards men was not due to an animus against the male gender.

Moreover, the Combs Defendants overlook the explanation in *Breest* that, "[r]ape and sexual assault are, by definition, actions taken against the victim without the victim's consent.

Without consent, sexual acts such as those alleged in the complaint are a violation of the victim's bodily autonomy… [m]alice or ill will based on gender is apparent from the alleged commission the act itself. Animus inheres where consent is absent." *Breest,* 180 AD3d at 94.

Therefore, the Complaint should not be dismissed as the Plaintiff has sufficiently established gender animus.

E.  **GMVL Applies to Corporate Defendants Based Upon Successor Liability**

On a motion to dismiss, the Court's analysis of the plaintiff's claims is limited to the four corners of the pleading, the allegations of which are given liberal construction and accepted as true. *See Johnson v. Proskauer Rose LLP*, 129 A.D.3d 59 (1st Dept. 2015). As such, when considering a motion to dismiss a complaint, the sole criterion is whether the pleading states a cause of action, and if, from the complaint's four corners, factual allegations are discerned which, taken together, manifest any cause of action cognizable at law, motion for dismissal will fail. *See Pacific Carlton Development Corp. v. 752 Pacific, LLC*, 62 A.D.3d 677 (2nd Dept. 2009); *Ruffino v. New York City Transit Authority*, 55 A.D.3d 817 (2nd Dept. 2008).; *See Sheridan v. Carter*, 48 A.D.3d 444 (2nd Dept. 2008); *Operative Cake Corp. v. Nassour*, 21 A.D.3d 1020 (2nd Dept. 2005).

Accordingly, on a motion to dismiss, a court should not resolve the merits of a claim by making factual determinations. *See T. Lemme Mechanical, Inc., v. Schalmont Cent. School Dist.*, 52 A.D.3d 1006 (3rd Dept. 2008). It is not the function of the Court to evaluate the merits of a case. *See Carbillano v. Ross*, 108 A.D.2d 776 (2nd Dept. 1985). Whether a plaintiff can ultimately establish her allegations is not part of the calculus in determining a motion to dismiss. *See Farber v. Breslin*, 47 A.D.3d 873 (2nd Dept. 2008). Rather, on a motion to dismiss, it is the trial court's duty to determine whether upon any rational construction of the evidence, trier of facts could find

for plaintiff, and not to weigh proof. *See Choi v. Mann*, 104 A.D.2d 354 (2nd Dept. 1984). On a motion to dismiss for failure to state cause of action, any fact that can be fairly implied from the pleadings will be deemed alleged. *See L. Magarian & Co., Inc., v. Timberland Co.*, 245 A.D.2d 69 (1st Dept. 1997).

A pleading attacked for insufficiency must be accorded a liberal construction, and if it states, in some recognizable form, any cause of action known to law, it cannot be dismissed. *See Schlackman v. Robin S. Weingast & Associates, Inc.*, 18 A.D.3d 729 (2nd Dept. 2005). If any portion of any cause of action is sufficient, it should not be dismissed on motion. *See Lacks v. Lacks*, 12 N.Y.2d 268 (1963); *Napoli v. St. Peter's Hospital of Brooklyn*, 213 N.Y.S.2d 6 (1961). When a cause of action may be discerned, no matter how poorly stated, the complaint should not be dismissed for failure to state cause of action. *See L. Magarian & Co., Inc., v. Timberland Co.*, 245 A.D.2d 69 (1st Dept. 1997).

Indeed, to survive a motion to dismiss for failure to state a cause of action, a pleading need only state allegations from which damages attributable to the named defendants conduct may reasonably be inferred. *See Fielding v. Kupferman*, 65 A.D.3d 437 (1st Dept. 2009). A motion to dismiss for failure to state a cause of action is available only where dispute pertains to law, not facts. *See Abrams v. Richmond County S.P.C.*, 125 Misc.2d 530 (1984); *New York State AFL-CIO v. Stimmel*, 105 Misc.2d 545 (1980).

Plaintiff's complaint gives the Company Defendants and the Court notice of occurrences intended to be proved and the material elements of each action. Under *Cole* the Court of Appeals held that a pleading's purpose is to tell the adverse party of the pleader's claim and prevent surprise. *See Cole v. Mandell Food Stores, Inc.*, 93 NY.2d 34, 40 (1999). In *DiMauro*, the Second Department ordered a new trial, in part based on a defective complaint. *See DiMauro v.*

*Metropolitan Suburban Bus Authority*, 483 NYS.2d 383, 386, 387 (2d Dept 1984). The plaintiff was injured in a car accident when defendant rear-ended the vehicle plaintiff was a passenger in. *Id.* at 386. The defendant initiated a third-party action against the driver of plaintiff's vehicle. *Id.* At trial the defendant asserted that part of plaintiff's damages derived from a defective seatbelt. *Id.* at 387. The Second Department held the defendant could not assert the defective seatbelt defense against the third-party defendant because the third-party complaint was void of references to the defective seatbelt. *See id.* at 387, 388. The Second Department held this failure to include references to a defective seatbelt was prejudicial to the third-party defendant, in part because the third-party defendant did not have the chance to enlist a seatbelt expert. *See id.* at 388. *See also Robin BB v. Kotzen*, 880 NYS.2d 713, 715 (3d Dept 2009) (holding that complaint allegations of multiple sexual assaults over a seven-year period sufficient to satisfy CPLR's standards). Plaintiff's complaint satisfies both the *Cole* and *DiMauro* standards. The complaint specifically outlines Plaintiff's claims and provides the Company Defendants with notice.

Additionally, the Company Defendants have not demonstrated any prejudice from the alleged deficiencies. Instead, the Company Defendants have made a conclusory statement that the allegations are insufficient.

Furthermore, it is premature at this juncture to grant defendants' application being that discovery has not yet commenced and the Company Defendants have yet to even answer the Complaint. It is significant to note that the information that plaintiff seeks is within the exclusive knowledge of defendants and can only conclusively be ascertained through discovery and party depositions. In *Morris v. Goldstein*, 223 A.D. 2d 582 (2nd Dept, 1996), the Court held that defendant was not entitled to summary judgment since information concerning defendant's

relationship with the defendant was within the exclusive knowledge of defendants and further disclosure was necessary.

Here, Plaintiff's Complaint details the allegations against the company defendants in clear detail such that denial of Defendants motion can be the only determination of the Court.

Further, Company Defendants attempt to assert a claim that they are not liable due to the fact that they were not in existence at the time of the alleged conduct. However, they do not take into account the concept and notion of successor liability, which is entirely applicable to the matter at issue.

The doctrine of successor liability applies to this case as Company Defendants are responsible for the acts, omissions and liabilities of its predecessors. *See Schumacher v. Richards Shear Company, Inc.* 59 N.Y. 2d 239 (Ct. App. 1983), in which the Court of Appeals held that a successor corporation or entity, and/or an entity which formed as a result of a merger, could be responsible for the liabilities of a predecessor entity. The Court stated, "A corporation may be held liable for the torts of its predecessor if (1) it expressly or impliedly assumed the predecessor's tort liability, (2) there was a consolidation or merger of seller and purchaser, (3) the purchasing corporation was a mere continuation of the selling corporation, or (4) the transaction is entered into fraudulently to escape such obligations.

In *Simpson v. Ithaca Gun Co*. LLC 50 A.D. 3d 1475 (4th Dept, 2008), the Court stated that the premise that a successor corporation may be responsible for liabilities of a predecessor corporation is based on the concept that a successor that effectively takes over a company in its entirety should carry the predecessor's liabilities as a concomitant to the benefits it derives from the good will purchased.

Defendant makes reference that in 2005, certain Company Defendants did not exist, insinuating that the companies had no affiliation or relationship with each other. However, their argument is misplaced. Indeed, where a successor purchases all or almost all of the predecessor corporation's assets, or the successor assumes a near nearly identical to that of the predecessor corporation, this may be sufficient to impose liability on the successor. *Burgos v. Pulse Combustion, Inc.*, 227 A.D. 2d 295 (1st Dept. 1996). Discovery is needed and essential to further ascertain this information.

Defendant's conclusory assertions that they cannot be held responsible for wrongdoing that occurred several years before the Company Defendants existed lacks merit. Defendant provides articles of incorporation to support their position that it should not be a party in this action. However, none of this conclusively establishes that the successor corporation did not subsume the liabilities of a previous business. When an entity engages in a mere name change and/or reorganization, successor liability applies. See *Kaur v. American Transit Insurance Company*, 19 N.Y.3d 827 (Ct. App. 2012), in which the Court of Appeals held that the law firm Baker, McEvoy, Morrissey & Moskovits, P.C. could be held liable as a successor in interest for the legal malpractice of a predecessor, Norman Volk & Associates, P.C. In this regard the Court stated as follows:

> Plaintiff brought an action alleging, among other things, legal malpractice, claiming that an insurer's in-house counsel, Norman Volk & Associates, P.C. (Volk) failed to represent certain parties in accordance with good and accepted legal principles and practices. Plaintiff further asserted that Baker, McEvoy, Morrissey & Moskovits, P.C. (BMMM) was liable as Volk's successor for the alleged malpractice. BMMM moved for summary

judgment dismissing the complaint against it on the grounds that it was not a successor to Volk, and had not merged or consolidated with Volk.

The motion court denied BMMM's motion for summary judgment, finding that there were unresolved factual issues as to whether BMMM was a "mere continuation" of Volk's practice or whether BMMM "de facto merged with" Volk. The Appellate Division concluded that BMMM's substitution for Volk in pending actions and its representations to the court that, essentially, Volk's attorneys would continue to work exclusively as counsel for the insurer at the same address and phone number but under a different name, established as a matter of law that BMMM was a "mere continuation" of Volk.

A sale of a business styled as an asset sale and purchase cannot violate an injured party's right to seek redress for the injuries suffered. *Grant-Howard v Gen. Housewares*, 63 NY2d 291, 297 [1984]. ("A sale of assets does not vitiate the original company's liability"). As such, even where an asset purchase agreement explicitly relieves the successor entity of liability, the successor corporation may be still be held liable. *See e.g. Burgos v Pulse Combustion, Inc.*, 227 AD2d 295 [1st Dept 1996].

The only "documentary evidence" that the Company Defendants submit are the certificates of incorporation. These certificates of incorporation should not be considered because they fail to establish that there was no relationship between the entity and its predecessors and therefore, do not "conclusively establish a defense to the asserted claims as a matter of law." *See Amsterdam Hospitality Group, LLC v. Marshall-Alan Assoc. Inc.*, 120 A.D.2d 431 (1st Dept. 2014); *Art & Fashion Corp.,* 120 A.D.2d at 439 (1st Dept. 2014); *Greuner v. Center for Specialty Care, Inc.,* 2016 N.Y. Misc. LEXIS 4412 (N.Y. County 2016).

It is well settled law that if it appears that material facts that justify opposition may exist but cannot be then stated, the court may deny the motion and issue a continuance to permit disclosure pursuant to CPLR § 3212(f). *Kagan v. U.S. Life Ins. Co.*, 21 A.D. 2d 846 (4th Dept, 1964) *Eller v. Tater*, 20 Misc. 3d 1110(A) (Bronx Cty Court, 2008), *Jones v. American Commerce Ins. Co*. 92 A.D. 3d 844 (2nd Dept, 2012). *See also James v. Aircraft Service Intern. Group*, 84 A.D. 3d 1026 (2nd Dept, 2011), where the Court denied summary judgment to defendant as the motion was premature and made prior to the exchange of any discovery leaving the opposing party with no reasonable opportunity for disclosure.

It is premature at this juncture to grant Company Defendants' application being that discovery has not yet commenced and defendant has yet to even answer the complaint. It is significant to note that the information that plaintiff seeks is within the exclusive knowledge of defendants and can only conclusively be ascertained through discovery and party depositions. In *Morris v. Goldstein*, 223 A.D. 2d 582 (2nd Dept, 1996), the Court held that defendant was not entitled to summary judgment since information concerning defendant's relationship with the defendant was within the exclusive knowledge of defendants and further disclosure was necessary.

Plaintiff has clearly and adequately pled all of his claims in his complaint and raised issues that necessitate discovery to effectively prosecute this case. As such, defendant's motion should be denied in full pending discovery. The prejudice in granting dismissal without discovery would be severe to plaintiff.

F.     **The Conduct of Company Defendants Subjects Them to Liability**

Company Defendants argue that Plaintiff's Complaint should be dismissed because there are no allegations of conduct subjecting them to liability.

The VGMVPL provides that "any person claiming to be injured by a party who commits, directs, *enables*, participates in, or *conspires* in the commission of a crime of violence motived by gender has a cause of action against such party." *See* NYC Municipal Code Title 10, Chapter 11, §10-1104.

To plead a claim of conspiracy, "the plaintiff must demonstrate the primary tort, plus the following four elements:" (i) the parties' intentional participation in furtherance of a plan or purpose; (ii) an agreement between two or more parties; (iii) an overt act in furtherance of the agreement; and (iv) resulting damage or injury. *Cohen Bros.*, 181 A.D.3d 401, 404 (1st Dept. 2020). When given the benefit of every favorable inference, it is clear that the Complaint contains well-pleaded allegations satisfying the additional elements to state a claim for conspiracy to commit those underlying torts.

*First*, Plaintiff has alleged facts demonstrating that both Combs and Company Defendants possessed a common purpose, which was to enable Combs to commit the sexual assault without repercussion, and intentionally participating acts in furtherance of that purpose, satisfying the first element of the conspiracy cause of action. *Second*, Plaintiff has alleged facts from which this Court can infer an agreement between Company Defendants and Combs to engage in this common scheme, satisfying the second element. Additionally, Plaintiff alleged that Company Defendants actively placed, maintained, and/or employed Combs in a position of power and authority, despite the fact that Company Defendants knew or should have known that Combs had a wide-spread practice of committing sexual assault and gender motivated violence, including on premises owned and/or operated by Company Defendants. *Third*, Plaintiff has alleged overt acts in furtherance of the aforementioned scheme, such as causing the ruination of

Plaintiff's potential career in the entertainment industry. *Fourth*, Plaintiff has alleged damages he has suffered as a result of the underlying tort.

Because Plaintiff has pleaded all of the elements necessary to state a claim for civil conspiracy to commit the underlying torts, this Court should deny Company Defendants' motion to dismiss on this ground as well.

## CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that this Court deny Defendant Macy's Inc.'s Motion to Dismiss in its entirety.

Dated: March 28, 2025

                                         Respectfully submitted,

                                         **CURIS LAW, PLLC**
                                         /s/ *Antigone Curis*
                                         Antigone Curis
                                         antigone@curislaw.com
                                         52 Duane Street, 7th Floor
                                         New York, New York 10007
                                         Phone: (646) 335-7220
                                         Facsimile: (315) 660-2610

                                         *Attorneys for Plaintiff John Doe*